**SHOEMAKER et al. v. NEWMAN et al.**

**No. 5202.**

Court of Appeals of the District of Columbia.

Reargued Jan. 3, 1933.

Decided April 24, 1933.

Stanton C. Peelle, Walter B. Guy, Frederic B. Warder, and Ralph D. Quinter, all of Washington, D. C., for appellants.

Wilton J. Lambert, R. H. Yeatman, George D. Horning, Jr., John S. Flannery, and W. C. Sullivan, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a decree of the Supreme Court of the District of Columbia in a suit by appellees, Enos S. Newman and Edwin A. Mooers, as surviving trustees under the last will and testament of Pierce Shoemaker, deceased, for a construction of certain trust provisions contained in the will.

The provisions of the will bearing upon this controversy are as follows: "I give, devise, and bequeath, all the rest, residue, reversion, and remainder, of my estate, real and personal, of whatsoever kind and wheresoever situated, whereof I shall die seized and possessed or to which I shall be entitled in any wise at the time of my death, unto my sons, Louis P. Shoemaker and Francis D. Shoemaker, my executors hereinafter appointed, and to the survivor of them, their and his heirs, executors, administrators, and assigns, forever, in trust for the execution of this will, to convert the same into cash, and to distribute, divide, and manage, as hereinafter prescribed, and to that end and for that purpose, I hereby authorize and empower my said executors and the survivor of them, at their and his discretion as to time, to sell and dispose of all or of any part of the aforesaid residue of my estate, real and personal, at public or private sale or sales for such price or prices and upon such terms and conditions as to them or the survivor of them, may seem best, and to grant and convey the property sold to the purchaser or purchasers thereof, his, her, or their heirs, executors, administrators, or assigns, absolutely, by delivery or in fee simple according to its kind, free from all liability for or on account of the application of the purchase money; and upon full compliance being made with the terms of any such sale or sales thereupon and as soon thereafter as conveniently may be done, to distribute and divide the proceeds thereof, after deducting therefrom a sum equal to three per centum of the gross amount of such sale or sales, which sum I hereby give and allow to my executors, or to the survivor of them, as compensation for their or his services in making such sale or sales—equally, share and share alike, between my four children, Louis P. Shoemaker, Francis D. Shoemaker, Clara A. Newman, formerly Clara A. Shoemaker, and Abigail C. Newman, formerly Abigail C. Shoemaker, and between the survivors of them; and if any one or more of my said children should have departed this life leaving lawful issue, him, her, or them, surviving at the time of making any such distribution or division of the proceeds of a sale or sales of any part of my said estate, then, and in that event I direct that said proceeds, less the commission allowed by me, as aforesaid, be distributed and divided equally between my surviving children and the issue then living of my child or children who may then be dead, the issue of such deceased child to take per stirpes and not per capita only the share or respective shares which the parent or respective parents if living would have taken, and pending such sales as may be made as aforesaid from time to time, I hereby further authorize and direct my said executors and the survivor of them, to manage, control, rent, and lease, my real estate and generally to do any acts which I might myself do with a view to protect the property and to realize upon it, and to divide up the rents and revenues which may be collected by them out of said property, after receiving therefrom a commission of five per centum on the gross amount or amounts thereof as a compensation which I hereby allow for their services in the care and management of the said property, monthly and from month to month among and between my said children, share and share alike, according to the manner of division hereinbefore prescribed in respect of sales."

Pierce Shoemaker died May 20, 1891, a widower, survived by two sons, Louis P. Shoemaker and Francis D. Shoemaker, and two daughters, Clara A. Newman and Abigail C. Newman. These parties, except Louis P. Shoemaker, who died prior to the institution of this suit, were parties defendant in the court below, but have not appealed.

Pierce Shoemaker was survived by five minor grandchildren. One of these, Abner C. P. Shoemaker, was the son and only descendant of Louis P. Shoemaker. Pierce Shoemaker at the time of his death was the

owner of large undeveloped tracts of real estate in the District of Columbia. By his will dated February 25, 1891, he bequeathed the residue of his estate, which was practically his entire estate, to his two sons, Louis P. Shoemaker and Francis D. Shoemaker, executors and trustees named in the will. The two sons qualified as executors and trustees, but Francis D. Shoemaker, refusing to co-operate in the execution of the trust, was removed by the court, and all the authority possessed by him as trustee was vested in Louis P. Shoemaker.

On December 5, 1900, Louis P. Shoemaker, in his own right as a beneficiary and as trustee under the will, filed a bill in equity in the Supreme Court of the District of Columbia in which he averred that by the terms of the will a sale of all the real estate and a division of the proceeds thereof among the beneficiaries was required. An order pro confesso was taken against Francis D. Shoemaker, but the other two defendants, Abigail C. Newman and Clara Newman, answered, claiming their rights to a partition of the lands of Pierce Shoemaker. The court entered a decree refusing a partition in kind but decreed that the land should be sold and the proceeds distributed.

On November 24, 1916, Louis P. Shoemaker died, leaving a widow, Harriet S. Shoemaker, one of the appellants in this case, and a son, Abner C. P. Shoemaker. By his will he left one-fourth of his estate to his widow; another one-fourth in trust for her benefit for life with a vested remainder to his son and the remaining one-half to his son. He also attempted by his will to convey to his son, Abner, his office as trustee under the will of Pierce Shoemaker.

On September 17, 1918, Abner C. P. Shoemaker, Enos S. Newman, and Edwin A. Mooers were appointed trustees, under the will of Pierce Shoemaker. On April 28, 1920, Abner died, leaving the appellees, Newman and Mooers, as the surviving trustees. Abner, by his will, left his estate in trust to Edgar D. Turner as trustee for the benefit of his adopted son and sole heir at law, Louis Glover Gardiner. On the death of Abner, who was a trustee under the will of his father of the one-fourth life interest which was to be held in trust for the widow, Harriet S. Shoemaker, the court appointed appellants Walter B. Guy and Edgar D. Turner as trustees.

Newman and Mooers, the surviving trustees, having sold a part of the real estate devised under the will of Pierce Shoemaker, instituted the present suit for the purpose of securing a construction of the trust provisions of the will and seeking the advice of the court as to the distribution of the proceeds of the sale.

The case turned, in the court below, upon the contention of Harriet S. Shoemaker, to the effect that under the will of Louis P. Shoemaker, one-eighth interest in the remaining undivided estate of Pierce Shoemaker vested in Abner C. P. Shoemaker and the remaining two one-fourth parts of the share of Louis P. Shoemaker vested absolutely in defendant Harriet Shoemaker and that she acquired a life interest in the other one-fourth.

In other words, the question before the court below was whether or not, under the terms of the will of Pierce Shoemaker, the undivided one-fourth interest in the estate became vested in Francis D. Shoemaker, Clara A. Newman, and Abigail C. Newman at the death of Abner C. P. Shoemaker or descended to the beneficiaries under the will of Louis P. Shoemaker. In the event that it so descended, a further question arose as to whether or not the adopted son, Louis Glover Gardiner, should succeed to the interest of his deceased foster father, Abner C. P. Shoemaker.

The court answering this controversy decreed as follows:

"3. That by the true construction of the will of Pierce Shoemaker, deceased, the plaintiffs are not empowered to divide in specie among the beneficiaries under said will any of the lands by the said will of Pierce Shoemaker devised, but that the true intent and meaning of the said will requires that all lands of the said Pierce Shoemaker devised shall be sold and the net proceeds derived from such sales distributed among the beneficiaries of the said will equally, share and share alike, namely, Francis D. Shoemaker, Clara A. Newman, and Abigail C. Newman, or such of them as shall be then alive, with substitution in the place and stead of such, if any, as may be then deceased, of their issue, if any, then living; provided, that in the event of the death of the said Francis D. Shoemaker, Clara A. Newman, and Abigail C. Newman, or any one or more of them, without issue who shall be living at the time of future sales, such future distribution of said net proceeds of sales shall be made as if such decedent having no issue surviving at the time of such sale or sales had never been a beneficiary under the said will.

"4. An adopted child or children of any child or of any descendant of the said Pierce Shoemaker is not entitled to share or participate in any distribution of the proceeds of any such sale."

Taking the will of Pierce Shoemaker by the four corners and examining it carefully to determine the intention of the testator, it is clear, we think, that it was his intention, and the will so provides, that the sale of the real estate and distribution of the proceeds should not extend beyond the lives of his children, or the child or children of a deceased child living at the time of making the distribution.

The trust created under the will was not a trust to hold the estate for any stated period. The trustees could have disposed of the entire estate and distributed the proceeds within one year or at any time during the lifetime of all of the four surviving children. The will contained nothing that can be distorted into a restraint on alienation. The trust created was merely for the purpose of selling and distributing the property of the testator. The duty imposed upon the trustees to whom the estate was conveyed was the power and positive direction to sell and convey the real estate and distribute the proceeds as directed by the terms of the will. The testator may well have considered that there was ample time for the trustees to dispose of the property and distribute the proceeds within the lives of his surviving children. The children were young. Over forty years has elapsed since the testator's death. Three of the children were involved in this suit in the court below, and the widow of the deceased son is here as one of the appellants.

He did the natural thing under the circumstances. He vested the equitable estate in the children, with the usual provision to meet the contingency of death. He provided that in the case of the death of one or more of his children, his or her interest in the remaining undistributed portion of the estate would go to his or her child or children then living, and in default of such issue or the failure of any one to take, the undistributed share of the deceased child should lapse into the residue of the estate, and be distributed to the remaining residuary legatees. No life estate was created with devise over or any contingent or other limitation of the estate.

The rule against perpetuities is invoked in this case in an effort to invalidate that part of the will which provides for the distribution of the proceeds of sale among other persons than the four children of the testator. It is contended by appellants that this creates a limitation over after the creation of an estate in the living children, which is void. We are not impressed by this contention. It is generally held that a devise over after a devise in fee is substitutionary when expressed by language such as "die 'without children,'" or "without leaving issue living at the time of his death." Barber v. Pittsburgh, Ft. Wayne & Chicago Railway Company, 166 U. S. 83, 17 S. Ct. 488, 492, 41 L. Ed. 925.

In Britton v. Thornton, 112 U. S. 526, 5 S. Ct. 291, 292, 28 L. Ed. 816, the court construed a will in which the testator devised certain lands to a granddaughter in fee and provided that, if she should "die in her minority, and without lawful issue then living, the land hereby devised shall revert and become a part of the residue of my estate." The daughter survived the testator and it was held that she took the estate in fee, subject to be divested by her in the event that she should die under age and without issue.

Applying the general rule that vested equitable interests whether of realty or personalty are not subject to the rule against perpetuities, this case resolves itself to the simple status of the testator leaving the residue of his estate to his four children living at the time of his death and vesting in each of them an equitable fee in one-fourth interest of the residue of the estate to be sold by trustees and the proceeds divided equally between the children share and share alike, with the condition that in the event of the death of one or more of the children prior to the completion of the sale of the property, the vested fee of such child or children should be subject to divestiture and substitution in the surviving issue of the deceased child or children at the time of distribution.

All this controversy about a limitation over has no application to this case. Here the contingency preventing the vesting in the issue does not relate alone to the death of the one in whom the estate had vested but to the person to take. If the contingency related merely to the event and not to the person to take, there would be no lapse by the death of the donee before the gift vested and the contingent right would descend to his heirs or devisees. Rood on Wills (2d Ed.) § 666.

But here the substitution of the child or the children living on the death of one of the testator's children is of the person and not of the event, hence when Abner C. P. Shoemaker died without issue the portion of the undistributed estate which would have gone

212

to him had he lived lapsed into the residue of the estate and belongs to the remaining residuary legatees. Louis P. Shoemaker was powerless to will his future share in the estate since at his death he was by the terms of his father's will divested of any further interest which he could will to his widow or any one else. It simply went to his son Abner, the substituted issue, under the express terms of the will. When Abner died without issue, his interest in the undistributed share of the estate followed the same course as would the share of a child of the testator dying without issue. It lapsed into the residue of the estate.

In Hazen v. American Security & Trust Company, 49 App. D. C. 297, 299, 265 F. 447, 449, this court quoted with approval as follows: " 'An interest is not obnoxious to the rule against perpetuities if it begins within lives in being and twenty-one years, although it may end beyond them.' Gray, Rule against Perpetuities (3d Ed.) par. 322. In Pulitzer v. Livingston, 89 Me. 359, 36 A. 635, the court thus defined a perpetuity: 'It is a grant of property wherein the vesting of an estate or interest is unlawfully postponed. The law allows the vesting of an estate or interest, and also the power of alienation, to be postponed for the period of a life or lives in being and 21 years and nine months thereafter, and all the restraints upon the vesting that may suspend it beyond that period are treated as perpetual restraints and void. * * * Nothing is denounced as a perpetuity that does not transgress this rule, and equity follows this rule by way of analogy in dealing with executory trusts, and those trusts which transgress the rule are called transgressive trusts, being in equity the special equivalent of what in law are called perpetuities. * * * The rule against perpetuities has no application to vested estates or interests.' "

Keeping in mind the above definition of the rule against perpetuities there is nothing in the present will, either express or implied, which authorizes the withholding of the proceeds from distribution for the benefit of either the children of the testator or the children of deceased children. There is nothing which postpones beyond the lives of the testator's children the sale of the property. Indeed, the will clearly from its language shows an intent on the part of the testator that the sale should be made and distribution completed during the lifetime of the surviving children or in the event of the death of one or more of his children to the child or children then living of such deceased child.

It is contended, however, that the time of distribution is the contingency which determines who shall take under the will. This contention would have some force if the testator, by the terms of the will, had attached a contingency to the time of distribution which could be interpreted as an intention on his part to delay distribution beyond the period fixed by the rule of perpetuities. No such interpretation can be placed upon the language of the will. All presumptions are in favor of its validity. It must, therefore, be presumed that the testator knew the law and aimed to provide for the sale and distribution within the lawful period. Mere delay, however, in making sale or making distribution of the proceeds cannot postpone either the vesting or the right of possession. Nor can the discretion given the trustees as to the time of making sales, if extended beyond the reasonable limits intended by the testator, create a perpetuity or affect the vested rights conveyed by the will, since any attempt on the part of the trustees to unduly prolong either the sale or distribution can easily be remedied through a court of equity. These are not conditions which can invoke the rule of perpetuities or prevent the vesting in interest. Jarman on Wills, 799, 835, 837.

Considering the rule against perpetuities and its application to a trust fund created without a limitation upon the power of alienation, the court in Robert v. Corning, 89 N. Y. 225, 235, said: "If the suspension is effected by the creation of an express trust to receive the rents and profits of land, under section 55 of the statute of uses and trusts, * * * the lawfulness of the suspension, depends upon the question, whether the trust term is, in respect of duration, lawfully constituted. But the mere creation of a trust, does not, ipso facto, suspend the power of alienation. It is only suspended by such a trust, where a trust-term is created, either expressly or by implication, during the existence of which, a sale by the trustee, would be in contravention of the trust. Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed, by the non-action of the trustee, or, in consequence of a discretion reposed in him, by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the power of alienation, and not at all to the time of its actual exercise, and when a trust for sale and distribution is made, without restriction as to time, and the trustees are empowered to receive the rents and profits, pending the sale for the

benefit of beneficiaries, the fact that the interest of the beneficiaries is inalienable by statute, during the existence of the trust, does not suspend the power of alienation, for the reason, that the trustees are persons in being, who can, at any time, convey an absolute fee in possession. The only question which, in such a case, can arise under the statute of perpetuities, is, whether the trusts in respect to the converted fund, are legal or operate to suspend the absolute ownership of the fund, beyond the period allowed by law. If the limitation of the interests in the proceeds, is illegal, the consequence might follow, that the power of sale given to accomplish the illegal purposes, would be void."

In the present case, which seems to be on all fours with the Corning Case, notwithstanding that the New York statute differs in some immaterial respects from ours, the trustees were empowered at any time from the date of the testator's death to convey an absolute fee in possession to the property held by them in trust. To hold that the failure of the testator in these circumstances to fix a limitation of time within which the trust should be fully executed invalidates the will, is equivalent to placing in the trustees the power through mere delay to invalidate an otherwise legal will. The testator may well have had in mind that his failure to place a limitation upon the trustees, beyond which the sale and distribution could be postponed, would better enable the trustees to advantageously dispose of the property of the estate. Trusts similar to the one here under consideration, without a time limitation for sale and distribution, with provision for the contingency of death and the substitution of surviving issue are not uncommon. There is no postponement in this instance against the vesting of the estate but only against the possession, and the rule against perpetuities does not apply to vested estates but to estates in which the vesting has been postponed. Armstrong v. Barber, 239 Ill. 389, 88 N. E. 246.

■ But it is urged that inasmuch as there is no limitation of time stated in the will within which the trustees must sell the property and distribute the proceeds, it left open a possibility that the sale and distribution of the proceeds might be delayed beyond the life or lives in being and twenty-one years thereafter, hence the rule against perpetuities may be invoked. But this contention may be laid aside from the absence in the will of any restraint on alienation or limitation upon the prompt action of the trustees in administering the estate. The possibility here contended for must arise from some provision of the will under which the delay in distribution can be justified. Otherwise unreasonable delay on the part of the trustees may be corrected by the intervention of a court of equity, and that is what has occurred in this case.

In 1901, fifteen years before the death of Louis P. Shoemaker, he, as sole trustee, and with the concurrent intervention of the three other children of the testator, applied to the equity court of the District of Columbia for a construction of the will and partition of the real estate in specie. The court construing the will refused to partition the land, but ordered Louis P. Shoemaker, as trustee, to "with all reasonable dispatch make sale and divide the net proceeds arising from said sale equally, share and share alike, among the beneficiaries under the will of said Pierce Shoemaker, deceased, and, to the end that such sales may be advantageously made, this cause is referred to the auditor with instructions to take testimony in behalf of the parties in interest and report to the court what, if any, subdivision of the lands of said Pierce Shoemaker, with dedication to public roads or streets through the same, may be material and necessary to the advantageous disposition of the lands aforesaid." The court then retained jurisdiction of that case "for all such further orders and directions in the premises as may be needful and proper until the complete administration of all of the trusts in said will provided."

Louis P. Shoemaker, as trustee, lived for fifteen years after the entry of this decree, and in direct violation of the mandate of the court delayed the sale of the lands and distribution of the proceeds as directed by the court. No one up to that time had questioned the validity of the will, and it would seem that the heirs of Louis P. Shoemaker are not now in favorable position to do so.

This action of the court, in whose jurisdiction the execution of the trust still remains, completely disposes of the contention that the will contains a possibility that through delay in the sale and disposition of the property the rule against perpetuities may intervene. Any delay now in the execution of the trust is with the implied sanction of the court, and the presumption will be indulged that the delay is in the interest of the beneficiaries under the will, and in accord with the orders of the court exercising jurisdiction over the administration of the estate.

■ The court may well consider the character of the property involved in this case, which has been increasing in value constantly

since the death of Pierce Shoemaker, suburban to the city of Washington, and capable of advantageous future development. It is not for us to say that the delay of the trustees in disposing of all of this property has been unreasonable. Indeed this is not a matter with which we are concerned, since it is within the power of any beneficiary to invoke the aid of the equity court to prevent further undue delay, if the court be advised that further delay is not advantageous to all concerned.

■■■ We come now to consider the rights, if any, of Louis Glover Gardiner, the adopted son of Abner C. P. Shoemaker, to whom Abner in his will attempted to convey his interest derived from the estate of his grandfather. It is settled law, we think, that an adopted child inherits only from his adopted parents, and does not inherit through the foster parents, from direct or collateral kin. Sunderland's Estate, 60 Iowa, 732, 13 N. W. 655; Kettell v. Baxter, 50 Misc. 428, 100 N. Y. S. 529. In the Baxter Case the court specifically held that an adopted child could not inherit through her adopted father his interest in his father's estate. This rule, we think, is without exception. Phillips v. McConica, 59 Ohio St. 1, 51 N. E. 445, 69 Am. St. Rep. 753; Quigley v. Mitchell, 41 Ohio St. 375; Merritt v. Morton, 143 Ky. 133, 136 S. W. 133, 33 L. R. A. (N. S.) 139; Moore v. Moore, 35 Vt. 98; Helms v. Elliott, 89 Tenn. 446, 14 S. W. 930, 10 L. R. A. 535; Miller v. Wick, 311 Ill. 269, 142 N. E. 490, 30 A. L. R. 1407.

The decree is affirmed with costs.

GRONER, Associate Justice (concurring).

In my dissent on the first hearing, my observations of what I considered to be the law were based upon the assumed fact, apparently conceded by counsel on both sides, that the time this estate has been in settlement has not been an unreasonable time. On that concession I based my conclusion that the rule against perpetuities was violated by the provision of the will under which the issue was raised. Upon reflection and further consideration, I am now disposed to think that the basis on which I took my former position is untenable, and in that view I am led to concur in the conclusion of my brethren, though I prefer to place my concurrence on somewhat different grounds from those of the court.

The pertinent part of the will is as follows:

"I hereby authorize and empower my said executors and the survivor of them, at their and his discretion as to time, to sell and dispose of all or of any part of the aforesaid residue of my estate real and personal, at public or private sale or sales for such price or prices and upon such terms and conditions as to them or the survivor of them, may seem best, and to grant and convey the property sold to the purchaser or purchasers thereof, his, her or their heirs, executors, administrators, or assigns, absolutely, by delivery or in fee simple according to its kind, free from all liability for or on account of the application of the purchase money; and upon full compliance being made with the terms of any such sale or sales thereupon and as soon thereafter as conveniently may be done, to distribute and divide the proceeds thereof, after deducting therefrom a sum equal to three per centum of the gross amount of such sale or sales, which sum I hereby give and allow to my executors, or to the survivor of them, as compensation for their or his services in making such sale or sales—equally, share and share alike, between my four children, Louis P. Shoemaker, Francis D. Shoemaker, Clara A. Newman, formerly Clara A. Shoemaker, and Abigail C. Newman, formerly Abigail C. Shoemaker, and between the survivors of them; and if any one or more of my said children should have departed this life leaving lawful issue, him, her or them surviving at the time of making any such distribution or division of the proceeds of a sale or sales of any part of my said estate then and in that event I direct that said proceeds, less the commission allowed by me, as aforesaid, be distributed and divided equally between my surviving children and the issue then living of my child or children who may then be dead, the issue of such deceased child to take per stirpes and not per capita only the share or respective shares which the parent or respective parents if living would have taken. * * * "

It is argued by appellants that the limitation in the will to the "issue" of a child of testator violates the perpetuities rule.

As will appear from the quoted extract above, testator in his will appointed his two sons, and the survivor of them, as his executors and trustees, and left to them the bulk of his estate to be by them, or him, sold and the proceeds distributed among testator's children living at the time of distribution or between the survivors of them at the time of distribution and the issue then living of such of his children as might then be dead. This,

I think, makes the will susceptible to no other construction than that the time of distribution will ultimately determine who are the beneficiaries to take.

The time of sale was not fixed but was to be at the discretion of the named executors or the survivor of them.

In 1901, in a case involving this will, it was decided that testator's children could not compel a partition of the property. It would follow as a corollary that they could not call for a conveyance to themselves. The correctness of this decision cannot now be questioned.

It may be that testator, having full and complete confidence in his sons, intended to repose in them a purely arbitrary discretion as to the reasonableness of time of sale, and, if such be the case, then a court would have no right to substitute its opinion as to reasonableness for that of the executors. On the other hand, testator may have intended the discretion not to be an arbitrary one but a reasonable one, and in such a case the court would be required in certain circumstances to interfere.

If the person in whom a discretion is reposed by the testator be living at the death of testator, then he would constitute a life in being by which the period of the rule against perpetuities would be gauged. If he refuse to act at all, or if in certain cases he seek the aid of a court of equity in the exercise of the discretionary power vested in him, then, as to the execution of that power, he has passed out of existence. Certain discretionary trusts fail upon the death of the discretionary trustee. However, trusts for sale, though they be discretionary, ordinarily will not be permitted by a court of equity to fail, for the court can execute them by having a sale within a reasonable time.

Whether the creation of interests in property, contingent for vesting upon the exercise of a power of sale, will violate the rule against perpetuities depends upon whether such power of sale must be exercised, if at all, within lives in being and twenty-one years thereafter. Gray on Perpetuities (2d Ed.) § 478. I think it may be stated as fundamental that a court of equity will, when its aid is sought, direct sales to be had within a reasonable time. What is reasonable time in any particular case depends upon the conditions and circumstances of that case. To avoid the rule against perpetuities we must say, however, as a matter of law, that in no case could a reasonable time be more than twenty-one years.

The purpose of the rule against perpetuities was to prevent the tying up of property and the taking of it out of commerce. The gross term of twenty-one years arose, as has been said, out of an accidental circumstance. Nevertheless that such is the limit of the rule is well settled. For a court of equity to recognize that it must apply the rule in a proper case, as of course it must, and at the same time to say that its own failure to compel action or that its own view as to what would be reasonable time for settlement might create a situation whereby such action was necessary would be anomalous—it would be to admit that a court of equity will stifle its own conscience.

Looking at the will in this case as of the date of the death of testator, and applying this reasoning, I necessarily reach the conclusion that the devise is good, for the law is that a limitation is either valid for all time or void for all time from the moment of its creation.

It might be said by some that in this conclusion I am shutting my eyes to actualities, for in this case the discretionary trustee availed of the aid of the equity court, and that court, on the 30th day of October 1901, or more than thirty-one years ago, directed a sale of all the lands "with all reasonable despatch," and yet to-day there remain unsold certain parcels of land and undetermined the persons who will share the proceeds of sale of those parcels. This delay, however, has been due primarily to the inaction of the parties in interest. When a court of equity directs a sale to be made with all reasonable despatch, the trustees for sale, though they must not sacrifice the property, yet must not delay sales in speculation as to enhancement in value. If the parties interested in the proceeds of sale want so to speculate with the property, they are not prevented from doing so, but this speculation must be by other means and after the property has passed out of the trustees' hands.

During this long period of years the parties interested at all times had it within their power to compel, by application to the court, a reasonably immediate—never to be considered to be as much as twenty-one years—winding up of the estate. This power in them puts the limitations over without the operation of the rule against perpetuities (Gray on Perpetuities, §§ 203, 444, 486), and failure of any particular party in interest to act

would give him no cause to complain, nor would it give any one claiming through him a better right.

The closest approach to this conclusion I have found is the case of Brandenburg et al. v. Thorndike et al., 139 Mass. 102, 28 N. E. 575. There testator left his estate to trustees to pay a certain sum to testator's wife during her life and at the expiration of three years from her death, "or at such time, whether earlier or later, as may, in the discretion of the trustees, be found expedient and practicable for the final settlement and distribution" of his estate, the trustees should distribute the proceeds among certain persons living at the time of distribution. It was contended that these bequests were void for remoteness because the estates might not vest until more than twenty-one years had passed after the death of the widow of testator. The court said:

"But this is not the fair construction of the will. It does not leave it to the unlimited discretion of the trustees to delay the vesting or enjoyment of the estates to such time as they think expedient. They are to pay and transfer the fund at the expiration of three years from the death of the widow, or at such time, earlier or later, as they may find expedient and practicable for the final settlement and distribution of the estate. Taking the view most favorable to the plaintiffs, the discretion of the trustees to delay the payment after the expiration of the three years is limited to such time as is reasonably necessary to settle the estate. They could not delay longer without violating their duty, and in case of unreasonable delay they would be compelled by a court of equity to make the payment and transfer. In no contingency could it be necessary or reasonable to delay the settlement and distribution of the estate for 21 years after the death of the widow. The estates of the nieces and nephew must vest within the limitation of time prescribed by the law against perpetuities, and the bequests, therefore, are not void for remoteness."

The principle on which the case quoted from turned is present here. The sale provided in the will, contemplated by the testator, and directed by the court would have avoided the possibility of the application of the rule. The failure to make the sale was the fault of the parties in interest. The probable enhancement of value of the property doubtless was the motive, but whatever the motive, the fact is the sale might have and would have been had except for inaction on the part of those concerned. Their failure to enforce a sale within a reasonable time will not affect a provision of the will valid at the time of testator's death.