Frank G. JOHNS, Jr., et al., Appellants,

v.

Edith Boardman COBB et al., Appellees.

No. 21516.

United States Court of Appeals
District of Columbia Circuit.

Argued May 14, 1968.

Decided Aug. 30, 1968.

Petition for Rehearing Denied
Oct. 10, 1968.

Certiorari Denied Feb. 24, 1969.
See 89 S.Ct. 876.

Mr. J. William Cain, Jr., Washington, D. C., with whom Mr. John F. Doyle, Washington, D. C., was on the brief, for appellants.

Mr. John M. Bixler, Washington, D. C., with whom Messrs. James A. Crooks, James F. Gordy and Donald H. Olson, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

BAZELON, Chief Judge:

This is an appeal from a judgment of the District Court holding that appellant, an adopted child, is not entitled to take under either of two wills which leave property to the "issue" of his adoptive mother. The first will was executed in 1922, two years before appellant's adoption; this was the will of his adoptive mother's grandmother. The other instrument was executed in 1944, when appellant was 22 years old; this was the will of his adoptive mother's aunt. Each will establishes a testamentary trust the income from which is payable to the adoptive mother and her siblings (who are respectively the grandmother's grandchildren and the aunt's nieces and nephews),[1] and to their "surviving issue" *per stirpes.* Since his adoptive mother is dead, appellant claims a share under these trusts as her "issue."

█ We find nothing within the four corners of the wills which assists us in ascertaining what the testators intended by the word "issue." Nor do we find helpful any of the extrinsic evidence in the record.[2] And we do not believe that the question is controlled by the adoption statute which was in effect at the time each will was drafted; "it is the will that is here being construed, and not the statute." Noreen v. Sparks, 92 U.S.App.D.C. 164, 166, 204 F.2d 56, 58 (1953).

█ Appellees argue, however, that the controversy can be resolved merely by looking at the word "issue", which in their view has an established legal meaning that excludes adopted children. We disagree. Our cases have seldom discussed the term in relation to adoption,[3] and enough uncertainty surrounds its usage that we doubt a competent draftsman who wanted to exclude adopted children would rely on the word "issue" alone to express that purpose.[4]

1. Under the 1944 will, a deceased brother of the adoptive mother is replaced as a beneficiary by his surviving widow.

2. Some courts have read significance into the fact that the will was executed subsequent to the adoption, as was the second will here, and have used this as a basis for including the adoptee within terms such as "issue." *See, e. g.,* In re Upjohn's Will, 304 N.Y. 366, 107 N.E. 2d 492 (1952). While we view the time of adoption here as a factor favoring appellant, we do not attach great importance to it except to the extent that it suggests the proceedings were undertaken in good faith. *See* note 9, *supra,* and accompanying text.

3. The only significant case of this Court which we have discovered is Shoemaker v. Newman, 62 App.D.C. 120, 65 F.2d 208, 89 A.L.R. 1034 (1933). The one-paragraph discussion of the adoption problem there was inconclusive and apparently related to intestate distribution rather than testamentary intent. *Shoe-*

*maker,* moreover, was decided eleven years after execution of the first will and therefore could not have influenced the first testator. Another case cited by appellees, Noreen v. Sparks, 92 U.S.App. D.C. 164, 204 F.2d 56 (1953), was concerned with the words "child or descendant" in a will executed before D.C. had an adoption statute. Even if the case has some relevance in defining the term issue, it was decided after the deaths of both testators and could not have been relied upon by either of them.

4. *See* In re Estate of Coe, 42 N.J. 485, 201 A.2d 571, 577 (1964): "The cases at most attributed but *prima facie* meaning to * * * [words such as 'issue'], and a competent draftsman would not deliberately pick a word which instead of controlling the context is easily colored by it." *See also,* for an analysis of the early cases which concludes that the "primary" meaning of "issue" includes adopted children, Kales, "Rights of Adopted Children," 9 Ill.L. Rev. 149, 158–174 (1914).

"Terms such as 'issue' * * * may or may not include adopted children; read alone, and apart from context, those words are ambiguous." In re Upjohn's Will, 304 N.Y. 366, 374, 107 N.E. 2d 492, 495 (1952).

■ We are left, then, without any indication of the testators' intentions regarding inclusion of appellant within the terms of their wills. It may well be that they never considered the matter at all. In such a situation, where the record and the inferences to be drawn therefrom do not suggest what the actual intent of the testator might have been, it is our duty to supply a reasonable intent by implication. Our guide in this undertaking is necessarily public policy, in accordance with which we assume the testators would have wished their wills to be interpreted.

■ The 1963 adoption statute of the District of Columbia provides a clear indication of this jurisdiction's general policy toward adopted children. That statute,[5] like the adoption statutes of many other jurisdictions,[6] accords adopted children all the rights of natural offspring. In keeping with this policy, and in view of the unmistakable trend of judicial decisions in other jurisdictions,[7] we hold that, absent any contrary indication of the testators' actual intent, appellant should be deemed to be included within the terms of the testamentary gifts to "issue" in the wills now before us.

This result, we think, is consistent with the probable preference of the great majority of testators. We have no reason to assume that these testators would have wished to discriminate against appellant "upon a biological basis."[8] There is no suggestion that his adoption was motivated by a desire to cut off other bequests under the wills.[9] Had the present testators considered the problem of adopted children and decided to exclude them from their wills, they could have done so explicitly. In the absence of such a statement of intention, or any other evidence of testators' actual intent, we can perceive no reasonable basis for excluding appellant from sharing, as "issue" of his mother, in the proceeds of the testamentary trusts.

The judgment of the District Court is reversed and the case remanded for entry of a decree consistent with this opinion.

Reversed and remanded.

WILBUR K. MILLER, Senior Circuit Judge, dissents.

---

5. D.C.Code § 16–312(a) (1967) provides that "[a] final decree of adoption establishes the relationship of natural parent and natural child between adoptor and adoptee for all purposes * * *." See also D.C.Code § 16–313 (1967).

6. See Binavince, "Adoption and the Law of Descent and Distribution: A Comparative Study and a Proposal For Model Legislation," 51 Cornell L.Q. 152, 159, 174 (1966).

7. See In re Estate of Heard, 49 Cal.2d 514, 319 P.2d 637 (1957) ("lawful issue"); In re Estate of Cunha, 49 Haw. 273, 414 P.2d 925 (1966) ("issue"); Meek v. Ames, 177 Kan. 565, 280 P. 2d 957 (1955) ("children"); Edmands v. Tice, 324 S.W.2d 491 (Ky.1958) ("children"), limited in Wilson v. Johnson, 389 S.W.2d 634 (Ky.1965); In re Holden's Trust, 207 Minn. 211, 291 N.W. 104 (1940) ("lawful issue"); St. Louis

Union Trust Co. v. Greenough, 282 S.W.2d 474 (Mo.1955) ("descendants"); In re Estate of Coe, 42 N.J. 485, 201 A.2d 571 (1964) ("lawful children"); Delaney v. First National Bank, 73 N.M. 192, 386 P.2d 711 (1963) ("lawful child or children"); In re Estate of Park, 15 N.Y.2d 413, 260 N.Y.S.2d 169, 207 N.E. 2d 859 (1965) ("issue").

8. In re Estate of Coe, supra note 7, 201 A.2d at 575. See also In re Estate of Heard, supra, note 7, 319 P.2d at 643; In re Patrick's Will, 259 Minn. 193, 106 N.W.2d 888, 890 (1960).

9. Compare Noreen v. Sparks, supra note 3, where the adoptees were 20 and 26 years old, respectively, and the adoption occurred long after the death of the testator. See generally Halbach, "The Rights of Adopted Children Under Class Gifts," 50 Iowa L.Rev. 971, 990–992 (1965).