Wilmer SCOTT and Miriam Utgoff, Appellants,

v.

Josephine Vivian THROPP, Executrix of the Estate of Douglas Scott Thropp, Deceased, et al., Appellees.

No. 11803.

District of Columbia Court of Appeals.

Argued Oct. 20, 1977.

Decided April 27, 1978.

Beverly Sherman Nash, Washington, D.C., with whom Hal Witt, Washington, D.C., was on the brief, for appellants.

Michael F. Curtin, Washington, D.C., for appellees.

Before KELLY, NEBEKER, and FERREN, Associate Judges.

FERREN, Associate Judge:

This case presents one question: the appropriate construction of a last will and testament. Appellants, Wilmer Scott and Miriam S. Utgoff, challenge the trial court's grant of summary judgment in favor of their cousins, Douglas S. Thropp, Jr. and Miriam S. Thropp (and the corresponding denial of appellants' cross-motion for summary judgment), in an action for final distribution of the assets of the residuary trust under the will of their grandmother, Miriam D. Thropp. We agree with the trial court's interpretation of the will and thus affirm the judgment.

I.

Miriam D. Thropp, the testatrix, died on October 4, 1930, leaving a will that was admitted to probate ten days later. Article Six—the focal point for this litigation—established a residuary trust which provided for Mrs. Thropp's three children, Anna Scott Farnum, Thomas A. Scott, and Douglas S. Thropp, as well as for their children.

For convenience, the family tree, with dates of death, can be set forth as follows:

Miriam D. Thropp (testatrix)
(10/4/30)

| | | |
|---|---|---|
| Anna Scott Farnum (5/25/40) | Thomas A. Scott (9/11/58) | Douglas S. Thropp (1/13/73) |
| [3 children] | Wilmer Scott Miriam S. Utgoff (Appellants) | Miriam S. Thropp Douglas S. Thropp, Jr. (Appellees) |

The general scheme of Mrs. Thropp's will was to provide income from the residuary trust to each of her three children and, upon their respective deaths, the same income to their children. In addition, as each of her three children—Mrs. Farnum, Mr. Scott, and Mr. Thropp—died, the children of the decedent were to receive a portion of the trust principal, leaving the balance in trust for the remaining children of the testatrix (to be distributed, eventually, in similar fashion).

More particularly, the testatrix provided in Article Six (summarized):

Clause e: one-fifth of the trust income to Anna and two-fifths each to Thomas and Douglas during their respective lifetimes, with such shares (upon death) continuing to their children until the final distribution of trust principal.

Clause f–3: Upon Anna's death, one-third of the trust principal in excess of $300,000 to her children over age 30 (otherwise held in trust until age 30).

Clauses f–2 and f–4: Upon Thomas's death, $150,000 of the trust principal, plus one-half the balance of the principal in excess of $300,000, to his children over age 30 (otherwise held in trust until age 30).

Clauses f–1 and f–4: Upon Douglas's death, $150,000 of the trust principal, plus one-half the balance of the principal in excess of $300,000, to his children over age 30 (otherwise held in trust until age 30).

When Anna Scott Farnum died in 1940, survived by three children over age 30, the children initiated a court action to determine their entitlement under the terms of the residuary trust. Because the trust principal was less than $300,000, the trial court concluded, pursuant to Article Six, Clause f–3, that they were entitled to no principal but were to receive a continuing one-fifth of the trust income pursuant to Article Six, Clause e. This result was affirmed on appeal. *Thropp v. Farnum*, 96 U.S.App.D.C. 175, 223 F.2d 640, *cert. denied*, 350 U.S. 923, 76 S.Ct. 212, 100 L.Ed. 808 (1955).

Thomas A. Scott died in 1958, with two surviving children, appellants Scott and Utgoff, both of whom were over age 30. The trustee, Fidelity-Philadelphia Trust Co., filed suit in federal district court seeking construction of the will. By order of June 20, 1961, the court determined that the two Scott children were entitled to:

—one-half of the trust principal, totaling $134,713.61; and

—two-fifths of the income of the remaining trust principal during Douglas S. Thropp's lifetime.[1]

Douglas S. Thropp died in 1973, survived by appellees Douglas, Jr., and Miriam Thropp, who were beyond age 30. The trustee again went to court for construction of the will—the present litigation. On December 14, 1976, the trial court granted appellees' and denied appellants' cross-motions for summary judgment, ordering distribution of all the remaining trust assets to appellees (the Thropp children). Appellants (the Scott children), claiming a portion of that balance, noted their appeal.

## II.

■ The parties agree that ascertainment of the testatrix's intent will be determinative here, *In re Estate of Glover*, 150 U.S.App.D.C. 147, 463 F.2d 1238 (1972); *Baker v. Nat. Sav. & Trust Co.*, 86 U.S.App. D.C. 161, 181 F.2d 273 (1950); *Cennamo v. Am. Sec. & Trust Co.*, 360 F.Supp. 1354

---

1. *Fidelity-Philadelphia Trust Co. v. Thropp, et al.*, C.A. No. 532–60 (D.D.C. 1961). The met amount actually distributed to the Scott children was $125,876.14, computed as follows:

| | |
|---|---|
| One-half the trust principal: | $134,713.61 |
| Plus capital appreciation on this share since the date of Thomas's death: | $ 16,367.16 |
| Minus the amount of a note plus interest owed by Thomas to the testatrix: | $ 18,704.63 |
| Minus the trustee's commission: | $ 6,500.00 |
| | $125,876.14 |

(D.D.C.1973), and that such intent is to be discovered within the "four corners" of the will, taken in its entirety, supplemented as necessary by extrinsic facts, *In re Estate of Glover, supra; Am. Sec. & Trust Co. v. Sullivan,* 72 F.Supp. 925 (D.D.C.1947). The parties also agree that Article Six of the will provides for total distribution at the time that the last of the three children of the testatrix died, and that the testatrix intended to treat her two sons (and their families) "equally." The dispute here, therefore, centers on the question whether the intended equality between the two families has been carried out by the final distribution.

■ The claim of appellants, Mr. Scott and Ms. Utgoff, can be summarized very simply. They point out that upon their father's death they did not receive the $150,000 of principal specified as a minimum in Clause f–2 of the will; instead, they were allocated $134,713.61 (representing one-half the trust principal), plus their continuing two-fifths of the income on the balance of the trust principal, under Clause e. Given the approximately $15,000 deficit in this earlier distribution, appellants argue here that the equality intended by their grandmother's will requires that (1) appellees receive, initially, no more than the same amount of principal that appellants did after their father's death ($134,713.61), and that (2) after appropriate adjustments for the parties' notes to the trust, appellants and appellees should each receive one-half the balance. As another way of putting it, appellants suggest that the very fact of their deficit at the time of the earlier distribution created, in effect, a future interest in one-half the trust balance after appellees receive an equally deficient distribution off the top (*i. e.,* $134,713.61).[2]

Appellees counter that appellants confuse equality of *treatment,* which was intended, with equality of dollar *distribution,* which was not intended. More particularly, appellees point out that Article Six of the will specifically requires discrete, final distributions of principal to the grandchildren at the respective times of their parents' deaths—which in appellants' case had been accomplished in 1961. They contend, moreover, by way of an equitable gloss on their central argument, that this mechanism—equally applicable to both sets of grandchildren—actually resulted in unequal distributions favoring appellants, not appellees.

We agree with appellees' position.

### III.

When the federal district court construed the will at the time of the distribution to appellants, granting them less than the $150,000 minimum specified by the terms of the document, the court concluded that a fifty-fifty division of the principal would best carry out the Article Six intent of the testatrix—equal treatment of her sons and their families.[3] The court recognized that the testatrix had anticipated a corpus in excess of $300,000; otherwise, she would

**2.** Appellants' counsel at oral argument responded to a question from the court by agreeing that appellants would not have a case if they had received the full $150,000 minimum (specified by the will) instead of approximately $135,000 at the time of their father's death. Thus, they are arguing that the approximately $15,000 shortfall should be deemed to have prevented a final accounting to their family (as would otherwise have been the case), and accordingly should be deemed to have left the trust open to a claim not only for the $15,000 deficiency but also for half the trust assets in excess of approximately $135,000 minimum distribution to each family.

**3.** In addition to Article Six, we find in Article Seven—which primarily conveys a rationale

for Anna Scott Farnum's lesser treatment—additional evidence of a desire by the testatrix to achieve parity of treatment for her two sons, Thomas and Douglas:

> *SEVENTH:* It has always been my intention and desire to reimburse my two sons, Douglas Scott Thropp and T. A. Scott Thropp, on account of their having incumbered their remainder interests in the estate of their grandfather, Thomas A. Scott, by the creation of two separate bond issues secured thereby in the sum of One Hundred Fifty Thousand Dollars ($150,000) each for the benefit of my husband Joseph E. Thropp. I have accordingly taken this fact into consideration in providing for my two sons and their issue as hereinbefore set forth.

not have specified a $150,000 minimum distribution.[4] The court in no way indicated that the Scott children (appellants here) had any future interest in a portion of the corpus that remained. *See Fidelity-Pennsylvania Trust Co. v. Thropp, et al.*, C.A. No. 532–60 (D.D.C.1961).

At that time, the Scott children did not appeal the court's determination, leaving us with a nice question of *res judicata.* But putting that question aside, and focusing solely on appellants' claim to a right of equal dollar distribution from the trust by virtue of an implied "future interest," one can see immediately that by virtue of their own father's earlier death, appellants Scott and Utgoof have been *favored*, not prejudiced, by the way the terms of the will have worked.

In 1961, when appellants received their share, they received $134,713.61 (representing one-half the value of the trust assets at the date of Mr. Scott's death in 1958), plus one-half ($16,367.16) the capital appreciation of the trust assets during the period of almost three years since the date of death. Since 1961, therefore, appellants have had free rein to reinvest their distribution with a view to maximizing capital appreciation and income, as they deemed best. *In addi-*

*tion*, appellants were to continue receiving two-fifths of the income on the balance of the assets remaining in trust for eventual distribution to appellees. Thus, as a matter of economic potential beginning in 1961, appellants not only were on an equal footing with appellees as to capital assets (the only difference being appellees' holdings continued in trust) but also were in a position to receive all the income from their own distributed portion *plus two-fifths of the income from appellees' family trust assets.*[5]

Also, were appellants' "equal distribution" theory to be applied fully and consistently to the Scott and Thropp, Jr. families, there would have to be an accounting for all assets previously distributed to appellants, as well as for those held in trust for appellees—with all net income (or loss), as well as all capital gains and losses, pooled for fifty-fifty redistribution. This approach, of course, theoretically could result in a contribution by appellants to appellees—a notion appellants have rejected. More important, such an approach is completely at odds with the explicit distribution mechanism (created in Article Six of the will)—a definitive distribution of principal at the death of each child of the testatrix.[6]

| | | |
|---|---|---|
| One-half the capital appreciation from date of death of T.A.S. to date of distribution, 6/20/61 | $ 16,367.16 | $ 16,367.16 |
| | $151,080.77 | $151,080.77 |

Appellants maintain that appellees' concession that Douglas's note should be subtracted from his children's share (as Thomas's note was from his children's share) cannot be reconciled with a total distribution to Douglas's children. As the foregoing table indicates, however, Douglas's note was allocated to the residue at the time of the 1961 distribution, and was therefore effectively subtracted at that time from his children's share.

4. When the rights of Anna Scott Farnum's children were settled, denying them any distribution of principal because the trust assets did not exceed $300,000, the appellate court twice noted that shrinkage of the assets below that amount was contrary to the contemplation of the testatrix. *Thropp v. Farnum*, 96 U.S.App. D.C. 175, 178, 223 F.2d 640, 643, *cert. denied*, 350 U.S. 923, 76 S.Ct. 212, 100 L.Ed. 808 (1955).

5. The 1961 federal district court order provided for equal allocation of the trust assets as follows, including allocation of family debts to their own respective shares:

| Thomas A. Scott Family (Distributed) | | Douglas S. Thropp Family | |
|---|---|---|---|
| T.A.S. Note | $ 18,704.63 | D.S.T. Note | $ 37,039.37 |
| Negotiable Securities | 116,008.98 | Negotiable Securities | 97,674.24 |
| | $134,713.61 | | $134,713.61 |

6. Appellants do recognize finality as to Anna Scott Farnum's children, who were held enti-

In summary, we agree with the trial court that the intent of the testatrix will be carried out if all trust assets distributable on death of Douglas S. Thropp go to his children, the appellees. We conclude that the equal treatment of the Scott and Thropp families, as initially determined by the trial court at the time of Mr. Scott's death, is the correct interpretation of the will, and that any adjustment purportedly justified by appellants' alleged $15,000 shortfall would amount to a rewriting of the will. This we cannot do.

*Affirmed.*

tled to no distribution out of trust principal because it did not exceed $300,000. Article Six, Clause f–3; *Thropp v. Farnum, supra.* Appellants maintain, however, that this recognition is not inconsistent with their position here, since Article Seven, *see* note 3, *supra,* reflects only an intent to treat Thomas and Douglas equally, not Anna. We find appellants' argument strained at best, for the distribution *mechanism* in Article Six is the same of all three children, irrespective of amount. Thus, for complete consistency, we believe that appellants would have to concede that at final distribution there should be a pooling as to all three children of the testatrix—a result that might well require a contribution from appellants to Anna's children. *Thropp v. Farnum, supra,* stands as a bar to such reopening as to Anna's children and, arguably, so does the federal district court order, *see* note 1, *supra,* as to appellants' claim here.